IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                              No. 11-CR-2516 WJ

ARMANDO LUGO MADRID,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR COMPASSIONATE RELEASE

THIS MATTER comes before the Court upon Defendant's Emergency Motion for Compassionate Release Under 18 U.S.C. §3582(c)(1)(A)(1) due to the COVID-19 pandemic, filed December 18, 2020 **(Doc. 60)**. Having reviewed the parties' briefing and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is DENIED.

### BACKGROUND

Defendant is currently incarcerated at the Federal Medical Center ("FMC") Fort Worth, serving a 144-month sentence for his conviction with an anticipated release date of September 26, 2021. He contends that he is unable to take proper precautions against COVID-19 at the facility and that he is "scared of contracting it and taking it home to his loved ones." Doc. 60 at 1. If granted a reduction in sentence and release, Defendant states that he would reside at home with his mother and get an electrical license.

### DISCUSSION

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*,

130 S. Ct. 2683, 2687 (2010)).  However, Congress has provided a limited exception to this general rule and allowed for certain "compassionate release" sentence modifications under 18 U.S.C. § 3582(c)(1)(A). To justify the type compassionate release that Defendant seeks, the Court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.* That said, a district court may not consider a request for compassionate release unless and until the prisoner has exhausted all administrative remedies. *See* § 3582(c)(1); *see also United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement). As the movant, Defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

For purposes of this case, the Government concedes that the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) has been satisfied, and that the Court is vested with jurisdiction to hear the motion Defendant filed a request for compassionate release with the Warden of his facility on November 27, 2020 and received a denial of the request on December 31, 2020, stating that Defendant's request for a reduction in sentence was being denied, because Defendant is a 38-year-old male with a Medical Care Level 1, with little to no medical concerns. *See* Doc. 64-5 and 64-6.[1]

---

[1]    To effectively exhaust under § 3582, a prisoner must make an initial request for compassionate release under 28 C.F.R. § 571.61, and appeal a denial pursuant to § 571.63.  See § 3582(c)(1)(A); see also 28 C.F.R. § 571.60–571.64 (Procedures for the Implementation of 18 U.S.C. § 3582(c)(1)(A)).  Alternatively, if thirty days have lapsed from receipt of the request by the warden of the facility where the prisoner is incarcerated with no action by the warden, a district court is empowered to consider the prisoner's § 3582(c)(1)(A) motion.

There is a split between district courts on whether the 30-day language in § 3582(c)(1)(A) is meant to serve as an either/or with respect to exhaustion of administrative remedies.  That is, some courts have concluded that as long as 30 days have lapsed since the warden's receipt of the request, a defendant may file a motion with the court, regardless of whether he has appealed the warden's timely decision. *See United States v. Whalen*, No. 1:11-CR-00033-JAW, 2020 WL 3802714, at *5, n. 2 (D. Me. July 7, 2020) (analyzing this split and comparing district court cases). In the absence of controlling authority from the Tenth Circuit, this Court joins "those courts that have concluded that the 30-day language is designed to ensure that the Warden acts timely and that when she does, the prisoner needs to exhaust his administrative appeal rights before proceeding to court." *See United States v. Rembert*,

If the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The Sentencing Commission's relevant policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that:

    (i) "extraordinary and compelling reasons warrant the reduction;"

    (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

    (iii) "the reduction is consistent with this policy statement."

USSG § 1B1.13. Applying this standard, the Court concludes that it must deny Defendant's motion for compassionate release for the reasons discussed below.

A.    <u>Extraordinary and Compelling Reasons Do Not Exist</u>

The "extraordinary and compelling reasons" standard may be met based on a defendant's medical condition, which in relevant part, can include the following categories:[2]

    (1) a defendant who is "suffering from a terminal illness";

    (2) a defendant who is suffering from a serious physical or medical condition;

    (3) a defendant who is suffering from a serious functional or cognitive impairment; or

    (4) a defendant who is experiencing deteriorating physical or mental health because of the aging process;

---

No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 107423, at *2–3 (D. Me. June 19, 2020). However, the Court will assume for purposes of this motion that exhaustion is satisfied in order to address Defendant's request on its merits.

[2] *See* USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances which are not pertinent here. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

. . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

If a defendant's medical condition does not fall within one of the categories, the Court must deny his motion.

Even construed liberally, as *pro se* pleadings must be, there is nothing in Defendant's motion that would allow the Court to find "extraordinary and compelling reasons" warranting a reduction in sentence. Defendant points to no health or medical condition that would make him more susceptible to contracting the virus, and so the Court turned to a review the medical and dental records provided by the Government. However, these records indicate that Defendant does not suffer from any medical conditions that make him a higher risk of getting very sick from COVID-19. *See* Docs. 64-1, 64-2 at 26 (no current medical conditions), 64-3 at 5 (no current medical conditions), 64-4. Defendant tested negative for the coronavirus in May and June of 2020. *See* Doc. 64-4 at 5 and 18. There is no question, then, that Defendant has no medical condition serious enough to "substantially diminish" his ability to provide self-care within the facility.

What the Court is left with is the question of whether Defendant's generalized fear of contracting COVID-19 is sufficient grounds for compassionate release from a prison facility— and it is not. The mere existence of the COVID-19 pandemic poses a general threat to every non-immune person in the country and does not create exceptional and extraordinary circumstances as a basis for a sentence reduction. BOP's policy statement categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. Thus, "the possibility that [COVID-19] may spread to a particular prison alone cannot independently justify compassionate release"). *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a

reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

Defendant expresses concern at the lack of COVID-restrictive measures at the facility, claiming that he is not able to properly social distance and does not have access to proper cleaning supplies. *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) (the "mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme"). While the Court is not unempathetic to the less-than-ideal conditions at the facility, it appears that BOP has nevertheless historically instituted and undertaken prompt and rigorous measures to address the threat of infectious disease, including the coronavirus. BOP prison facilities have adopted "modified operations" stepping up the measures to respond to the various phases of the virus and its effects on the prison population. Such measures include: staggering meal and recreation times to promote social distancing; ensuring that "all cleaning, sanitation, and medical supplies" had been inventoried and were adequately stocked; suspending social and legal visits, curtailing inmate movement; establishing enhanced screening procedures for inmates and staff; and curtailing staff travel.[3] These measures appear to be effective: according to the latest information available on the BOP's website (as of January 4, 2021), in Defendant's facility (Fort Worth FMC), 683 inmates and 15 staff have recovered from the virus, although there have been 13 inmate deaths and no staff deaths. The numbers also indicate there is a leveling-off of

---

[3] *See* https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf. (COVID-19 update, March 24, 2020).

the situation, because (as of January 4, 2021), only 17 inmates and 32 staff tested positive for the virus. *Id*.

Defendant has not shown that he has any medical condition that qualifies as an "extraordinary and compelling reason" for release, and on that ground alone the Court may deny his motion.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Emergency Motion for Compassionate Release Under 18 U.S.C. §3582(c)(1)(A)(1) **(Doc. 60)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE